STATE v. MICHAEL J. McGLYNN.

195 N. W. 2d 583.

March 10, 1972—No. 42326.

*C. Paul Jones,* State Public Defender, and *Jerome D. Truhn,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *George M. Scott,* County Attorney, and *Henry W. McCarr, Jr.,* and *David G. Roston,* Assistant County Attorneys, for respondent.

Heard before Knutson, C. J., and Otis, Peterson, Todd, and Mason, JJ.

PETERSON, JUSTICE.

Defendant, Michael J. McGlynn, appealing from his conviction of aggravated robbery, challenges the constitutional propriety of testimony against him by two of his accomplices, Franklin J. Antell and Mary Anderson, both of whom had pleaded guilty to the offense but had not been sentenced, and the sufficiency of non-accomplice testimony to corroborate the Antell-Anderson testimony.

Defendant was the mastermind of a blundered fur robbery on December 12, 1968. At about noon of that day, defendant borrowed a blue 1963 Oldsmobile from Herbert Wroge, a used-

car salesman, on the pretense of taking it to his wife for approval. This automobile was later identified by others as the getaway vehicle. At about 2:30 p.m. defendant and Raymond Stanley Smith (an accomplice who did not testify as state's witness) approached Antell, who was walking with his girl friend, Gail Dubak, and asked whether he "wanted to go on a score." Although Antell initially refused, he reconsidered after defendant assured him that the "score was real easy." Mrs. Dubak did not hear the conversation since, at Antell's suggestion, she had continued walking to a nearby store to wait for him. Shortly thereafter, Antell and Mrs. Dubak accompanied defendant and Smith to Mary Anderson's apartment, which Smith shared with Mrs. Anderson, a divorcee. The presence of these persons together at the apartment both before and after the robbery was, as hereafter noted, attested by other witnesses.

At the apartment Antell, at defendant's direction, shaved off his beard and mustache and put on dress clothes supplied by defendant. Defendant gave Mrs. Anderson a blond wig to wear in the robbery, a wig similar to that which defendant gave for safekeeping to his downstairs neighbor, Colleen Clark, a few days after the robbery. Defendant at the same time handed a loaded .22-caliber revolver to Antell and supplied Antell and Smith with nylon hosiery with which to bind the persons to be robbed and laundry bags in which to carry the stolen furs.

Smith, Antell, and Mrs. Anderson then proceeded to execute the robbery of the Gershkow Fur Company at 1013 West Broadway, Minneapolis. Smith and Mrs. Anderson, who had previously visited the Gershkow store pretending to look at furs, entered first. As Mrs. Anderson was trying on a fur jacket, Antell entered twirling the revolver on his finger, and at some point he shot his own finger, an injury later observed by others. After tying up Gershkow and his wife with the nylon hosiery, Antell and Smith filled the laundry bags with furs, but they had tied Gershkow so ineffectually that he immediately escaped after they had left the store. Gershkow observed the blue Oldsmobile get-

away car and ran to it, grabbing the car door handle. This so startled the robbers that they rear-ended another automobile. They drove away, but Gershkow noted the license number and reported it to the police.

The errant trio returned to the Anderson apartment. Antell proceeded to place the laundry bags loaded with stolen furs into a panel truck which defendant had stated would be parked there for that purpose. However, the truck proved to be an exterminator's van, and Smith ran back from the apartment to assist Antell in carrying the loot into the apartment.

Defendant came to the apartment later to pick up the furs. Mrs. Dubak and Kathleen LaFore, a babysitter for Mrs. Anderson's children, observed defendant moving laundry bags in the apartment, and Mrs. Dubak saw defendant leave the premises carrying two large white bags which "looked like they were full of something." These bags were like those defendant supplied to Antell and Smith prior to the robbery.

Antell did not deliver all of the stolen furs to defendant but hid one fur coat under the bed before defendant came. He later offered to sell the coat to one Tim Janzen who, having read of the Gershkow fur robbery, turned the fur coat over to the police. Defendant himself sold one of the furs to his neighbor, Colleen Clark, who likewise turned the coat over to the police. Mrs. Gershkow subsequently identified one of the fur coats for the police from hand embroidery she had done on the inside of the coat.

■ The contention of defendant that the testimony of an accomplice is not adequately corroborated unless the evidence "directly" implicates the defendant in the crime is without merit. As we held in State v. Sorg, 275 Minn. 1, 5, 144 N. W. 2d 783, 786 (1966), corroborative testimony of nonaccomplices or other evidence may include:

"* * * [P]articipation in the preparation for the criminal act; opportunity and motive; proximity of the defendant to the place where the crime was committed under unusual circum-

stances; association with persons involved in the crime in such a way as to suggest joint participation; possession of an instrument or instruments probably used to commit the offense; and unexplained affluence or possession of the fruits of criminal conduct."

The corroboration required by Minn. St. 634.04, as we stated in State v. Stave, 280 Minn. 269, 270, 158 N. W. 2d 848, 850 (1968), "need not be of sufficient weight to establish a prima facie case for conviction," it being sufficient that circumstantial evidence clearly implicates defendant in the crime.

The testimony of those persons, nonaccomplices, whose names are stated in the above recital of the facts clearly meets the Sorg-Stave criteria, amply corroborating the clear testimony of defendant's accomplices in the crime.

■ Defendant's contention that the circumstances under which his accomplices testified denied his right to a fair trial and due process is likewise without merit. The essence of this contention is that the accomplices, having been convicted but not yet sentenced at the time of trial, would too zealously cooperate with the state in testimony against the defendant in the self-serving expectation of a reward of leniency in their own sentences. If the jury was not instinctively aware of this impeaching possibility, defendant's counsel actively stimulated the jurors' awareness by vigorous cross-examination of Antell and Mrs. Anderson concerning promises of leniency made to them by either the prosecuting authorities or the court with respect to a sentence not yet imposed.[1]

---

[1] Their denial, to be sure, did not necessarily exclude the likely hope of the leniency that was subsequently accorded them. Antell and Mrs. Anderson, who pleaded guilty to charges of aggravated robbery, were subsequently sentenced to 5-year terms and were immediately granted probation. Smith, on the other hand, who had pled guilty but had not testified against defendant, was sentenced to a term of 3 years without probation. The court undoubtedly accorded Antell and Mrs. Anderson leniency because of their cooperation with the prosecutor, but the greater severity of Smith's sentence may additionally be attributed to

No authority has been cited for this claim that there is a constitutional impediment to the state's use of witnesses who, under expectancy of leniency, testify for the state. The credibility of such a witness is, naturally, suspect, but the issue of credibility is for the jury. The inherent corruptness of a confessed criminal is the very reason for the statute's requiring that an accomplice's testimony be corroborated. State v. Lyons, 144 Minn. 348, 354, 175 N. W. 689, 692 (1919).

Affirmed.

---

a greater degree of culpability in the crime with respect to Smith's participating with defendant in the solicitation of Antell. See, State v. Andrews, 282 Minn. 386, 390, 165 N. W. 2d 528, 531 (1969); State v. Gamelgard, 287 Minn. 74, 78, 177 N. W. 2d 404, 407 (1970).