STATE OF HAWAII, Plaintiff-Appellant
*v.* CARLTON A. ROY, Defendant-Appellee

No. 5333

JUNE 6, 1973

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

The question for resolution here is whether evidence obtained by a police officer without a search warrant as a result of the officer misrepresenting his identity and stating his willingness to purchase marijuana, should be suppressed at a pretrial hearing as obtained in violation of the Fourth and Fourteenth Amendments to the United States Constitution and article I, section 5 of the Constitution of the State of Hawaii. We hold that under

the facts of this case, the evidence should not be suppressed. The facts may be briefly stated as follows:

On April 3, 1972, Mr. Jeffrey Judd was working as an undercover agent in the Vice Squad of the Hawaii County Police Department. Around 12 p.m. on that date, at a restaurant in Hilo, Mr. Judd met a person named "Jim" who told him that he knew of a house wherein marijuana could be purchased. Mr. Judd indicated his desire to purchase some and plans were made to meet later and go together to the house.

About 2:30 p.m., Mr. Judd and Jim proceeded to the house where appellant, Mr. Roy, admitted them into the living room. Jim inquired as to whether Mr. Roy had received the marijuana Jim had previously ordered. Mr. Roy said the marijuana had come in and he then showed Jim and Mr. Judd a "brick" of compressed marijuana.[1] Mr. Roy then told Jim and Mr. Judd to return at 6:00 p.m. to purchase what they wanted since he was waiting for a friend to come and break up the marijuana into smaller portions called "lids."[2] After the conversation, Jim and Mr. Judd left the home.

At approximately 6:00 p.m., Jim and Mr. Judd returned to and were admitted into the home. Upon request, they locked the door behind them, then proceeded into a bedroom where they found Mr. Roy sitting on the floor weighing broken up marijuana and placing it into plastic bags. A brief discussion then took place concerning prices after which Jim and Mr. Judd stated a desire to purchase two lids. Mr. Roy weighed out the correct amount of marijuana, then passed it to Jim who in turn passed it to Mr. Judd. Mr. Judd then handed a $20 bill to Mr. Roy who accepted it. Jim and Mr. Judd departed the premises a few minutes after the transaction was completed.

---

[1] A "brick" is a portion of compressed marijuana which weighs approximately 2.2 pounds.

[2] A "lid" is a term used to describe a 1-ounce portion of marijuana.

Mr. Roy was indicted on May 31, 1972 in the Third Circuit Court in Hilo, Hawaii, and charged with unlawful transfer of marijuana. Mr. Roy filed a pretrial motion on June 16, 1972, wherein he alleged that the State's evidence, consisting of material reputed to be marijuana and the observations of Officer Judd, should be suppressed. Following a hearing, the circuit court granted the motion to suppress, holding that as the second entry into the house by Officer Judd "could not be justified without requiring the police to get a search warrant," the evidence obtained by Officer Judd pursuant to his second entry had been derived by the State as the fruit of an unlawful search and seizure prohibited by the Fourth and Fourteenth Amendments to the Constitution of the United States and by article I, section 5 of the Constitution of the State of Hawaii. The central question on this appeal is whether or not the circuit court erred in this ruling.

The Fourth Amendment to the Constitution of the United States provides that "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The U.S. Supreme Court has held that evidence obtained by government agents during an "unreasonable" search may not be used in state courts, *Mapp* v. *Ohio,* 367 U.S. 643 (1961), and that searches conducted without search warrants are unreasonable *per se* unless shown to be within one of the exceptions to the rule that a search must rest upon a valid warrant, *Katz* v. *United States,* 389 U.S. 347, 357 (1967). It is unnecessary to determine whether the facts of this case come within one of those exceptions, however, for we hold that Officer Judd's actions did not constitute a search or seizure as regulated by the Fourth Amendment.

Although the Fourth Amendment governs not only the seizure of tangible items, but extends to the recording

of oral statements, government activities in listening to a person's words constitute an unreasonable search and seizure only if those activities violate that person's justifiable expectations of privacy. *Katz* v. *United States, supra; State* v. *Dias,* 52 Haw. 100, 106, 470 P.2d 510, 514 (1970). The U.S. Supreme Court has consistently held, in a series of recent decisions concerning secret agent activities,[3] that a defendant's expectation that a person with whom he is conversing will not later reveal the conversation to the police is not justifiable nor protected by the Fourth Amendment.

As the Court summarized in *United States* v. *White,* 401 U.S. 745, 749 (1971):

> *Hoffa* v. *United States,* 385 U.S. 293 (1966), . . . held that however strongly a defendant may trust an apparent colleague, his expectations in this respect are not protected by the Fourth Amendment when it turns out that the colleague is a government agent regularly communicating with the authorities. In these circumstances, "no interest legitimately protected by the Fourth Amendment is involved," for that amendment affords no protection to "a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." *Hoffa* v. *United States,* at 302. No warrant to "search and seize" is required in such circumstances, nor is it when the Government sends to defendant's home a secret agent who conceals his identity and makes a purchase of narcotics from the accused, *Lewis* v. *United States,* 385 U.S. 206 (1966) . . . .

It is clear beyond peradventure, then, that the Fourth Amendment to the U.S. Constitution, as interpreted by the U.S. Supreme Court, does not prohibit the introduction into evidence of the conversation and marijuana

---

[3] *Hoffa* v. *United States,* 385 U.S. 293 (1966); *Lewis* v. *United States,* 385 U.S. 206 (1966); *United States* v. *White,* 401 U.S. 745 (1971).

"seized" by Officer Judd during his second visit to the house. Appellee contends, however, that even if the U.S. Constitution does not protect him, the introduction of the evidence obtained by Officer Judd is prohibited by article I, § 5 of the Hawaii Constitution. We find no merit in this contention.

As we stated recently in *State* v. *Santiago,* 53 Haw. 254, 265, 492 P.2d 657, 664 (1971), "this court is the final arbiter of the meaning of the provisions of the Hawaii Constitution. Nothing prevents our constitutional drafters from fashioning greater protections for criminal defendants than those given by the United States Constitution." *State* v. *Santiago; accord, State* v. *Texeira,* 50 Haw. 138, 142, 433 P.2d 593, 597 (1967). We do not believe, however, that our constitutional drafters intended to protect criminal defendants from warrantless secret agents. Prior to 1968, the wording of article I, § 5 was identical to that of the Fourth Amendment. In 1968, article I, § 5 was amended to read, "the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures, and *invasions of privacy* shall not be violated." Haw. Const. art. I, § 5 (emphasis added). A careful review of Report No. 55 of the 1968 Constitutional Convention, in which the amendment was proposed, and of the debates in the Committee of the Whole regarding that amendment, has led us to conclude that the delegates to the constitutional convention added to article I, § 5 the words "invasions of privacy" out of a concern to protect against extensive governmental use of electronic surveillance techniques, and not out of any desire to curb the activities of secret government agents. The delegates may well have been mindful, as we are, of the U.S. Supreme Court's reminder in *Lewis* v. *United States,* 385 U.S. 206 (1966), a case factually similar to the instant case, that:

> [w]ere we to hold the deceptions of the agent in this case constitutionally prohibited, we would come near

to a rule that the use of undercover agents in any manner is virtually unconstitutional *per se*. Such a rule would, for example, severely hamper the Government in ferreting out those organized criminal activities that are characterized by covert dealings with victims who either cannot or do not protest. A prime example is provided by the narcotics traffic. 385 U.S. at 210 (footnote omitted) .

Reversed and remanded for further proceedings.

*Christopher J. Roehrig,* Deputy Prosecuting Attorney (*Paul M. De Silva,* Prosecuting Attorney, with him on the briefs) for plaintiff-appellant

*Steven K. Christensen* (*Christensen and Clark,* of counsel) for defendant-appellee

*John Campbell, Jr.,* Deputy Attorney General, representing the Attorney General, amicus curiae

---

CONCURRING OPINION OF LEVINSON, J.

I concur in the result, but I wish to make it clear that I do not think that protection against governmental use of electronic surveillance techniques was the only reason why the delegates to the 1968 Constitutional Convention added to article 1, section 5 the words "invasions of privacy", as the opinion of the court implies. The Standing Committee Report No. 55, referred to in the opinion of the court, says: "The proposed amendment is intended to include protection against indiscriminate wire-tapping *as well as* undue government inquiry into and regulation of those areas of a person's life which is defined as necessary to insure 'man's individuality and human dignity.' " [Emphasis added].