PEOPLE v HALL

Docket No. 77-834. Submitted August 31, 1978, at Lansing.—Decided
February 5, 1979. Leave to appeal denied, 406 Mich 941.

Bobby W. Hall was convicted of delivery of heroin in Washtenaw
Circuit Court, William F. Ager, Jr., J. The trial court had
admitted into evidence, over defendant's objection, a tape re-
cording of a conversation between defendant and a police
informant. No search warrant had been obtained authorizing
the police to tape the conversation. Defendant appeals, alleging
that the trial court erred in admitting the tape recording into
evidence on the ground that the recording of the conversation
was an unreasonable search and seizure. The people contend
that no search warrant was required to record defendant's
conversation. *Held:*

The police must first obtain a search warrant authorizing the
recording of a conversation before they can tape a conversation
between an individual and a police informant.

Reversed.

DANHOF, C.J., dissented and would hold that preservation of
information by simultaneously recording it on tape does not
violate the constitutional prohibition against unreasonable
searches and seizures where the police obtain the information
from a tape recording of a defendant engaged in a conversation
with a police informant without first having obtained a search
warrant.

REFERENCES FOR POINTS IN HEADNOTES

[1, 6] 68 Am Jur 2d, Searches and Seizures §§ 24, 36.
   74 Am Jur 2d, Telecommunications § 209, 216, 217.
[2, 3] 68 Am Jur 2d, Searches and Seizures §§ 2, 4, 24, 31.
   74 Am Jur 2d, Telecommunications §§ 209, 216, 217.
[4] 68 Am Jur 2d, Searches and Seizures § 35 *et seq.*
[5, 7] 74 Telecommunications § 217.
[8] 62 Am Jur 2d, Privacy §§ 1, 4, 6.
   68 Am Jur 2d, Searches and Seizures §§ 2, 4.
   Right of privacy. 14 ALR2d 750.
[9] 68 Am Jur 2d, Searches and Seizures § 31.
   74 Am Jur 2d, Telecommunications § 217.

OPINION OF THE COURT

1. SEARCHES AND SEIZURES — CONVERSATIONS — PARTICIPANT MONI-
   TORING — THIRD-PARTY TRANSMISSIONS — PARTICIPANT RECORD-
   INGS — SEARCH WARRANTS.

   Participant monitoring through the use of an electronic device by
   a participant in a conversation which transmits the exchange
   to a third party, and the recording of a conversation by a
   participant in the conversation on tape instead of transmitting
   it are both searches and seizures which must comply with
   search warrant requirements.

2. SEARCHES AND SEIZURES — CONVERSATIONS — PARTICIPANT MONI-
   TORING — THIRD-PARTY TRANSMISSIONS — PARTICIPANT RECORD-
   INGS — RIGHT OF PRIVACY — INTRUSIONS ON PRIVACY.

   The simultaneous disclosure of a conversation to third parties in
   participant monitoring and the recording of a conversation by a
   participant informer are equally intrusive of personal privacy;
   the fact that a recording of a conversation could be stored
   permanently and then produced long after the participants or
   their monitors forgot about the conversation makes participant
   recording just as intrusive of privacy as participant monitoring
   with its simultaneous transmission of a conversation and sub-
   ject to the same restrictions on its use.

3. SEARCHES AND SEIZURES — CONSTITUTIONAL LAW — CONVERSATIONS
   — PARTICIPANT RECORDINGS — RIGHT OF PRIVACY — SEARCH
   WARRANTS.

   Government officials may not record the conversations of citizens
   with whom they or their informants come into contact at their
   unbridled discretion; such action impermissibly invades an
   individual's right to privacy and constitutes a violation of the
   state constitution's prohibition against unreasonable searches
   and seizures; therefore, before the police may lawfully tape a
   conversation between an individual and a police informant,
   they must first obtain a search warrant authorizing the record-
   ing of the conversation.

4. SEARCHES AND SEIZURES — CONVERSATIONS — RIGHT OF PRIVACY —
   GOVERNMENT OFFICIALS — MAGISTRATES — PROBABLE CAUSE —
   SEARCH WARRANTS.

   The privacy of citizens should be protected from fishing expedi-
   tions and the whims of misguided or overzealous government
   officials by requiring the submission of reliable information to a
   neutral magistrate for a determination where there is probable

cause to believe criminal activity is under way before attempting to record conversations.

DISSENT BY DANHOF, C.J.

5. CONSTITUTIONAL LAW — SEARCHES AND SEIZURES — CONVERSATIONS — PARTICIPANT RECORDING — PARTICIPANT MONITORING — AMENDMENTS.

Search warrants are not required for participant recording or participant monitoring of conversations as a matter of Federal constitutional law (US Const, Ams IV, XIV).

6. CONSTITUTIONAL LAW — SEARCHES AND SEIZURES — CONVERSATIONS — PARTICIPANT MONITORING — ELECTRONIC DEVICE TRANSMISSIONS — SEARCH WARRANTS.

Participant monitoring of a conversation through the use of an electronic device to transmit the exchange of words to a third party requires a search warrant to satisfy the constitutional provision governing searches and seizures in Michigan (Const 1963, art 1, § 11).

7. SEARCHES AND SEIZURES — CONVERSATIONS — RIGHT OF PRIVACY — PARTICIPANT MONITORING — PARTICIPANT RECORDINGS — DEFINITIONS.

Participant recording is distinguishable from participant monitoring; participant monitoring involves simultaneous transmissions to third parties wherein the participant in a conversation has no control other than to turn off the monitor, everything and anything is automatically and simultaneously disclosed to the uninvited third ear and this is the feature of participant monitoring which makes it particularly offensive; participant recording, on the other hand, does not involve these same concerns, there is no simultaneous disclosure to third parties, the recording merely preserves the conversation in a more reliable form and any disclosures made will be because the participant decided to make them after hearing the conversation.

8. PRIVACY, RIGHT OF — PEOPLE AND PLACES — RESIDENCE.

The right of privacy protects people, not places; however, the right of privacy takes on special significance when one is in his own home where a person's justifiable expectations of privacy is the greatest.

9. SEARCHES AND SEIZURES — CONSTITUTIONAL LAW — CONVERSATIONS
   — TAPE RECORDINGS.
   *Preservation of information in a conversation between an infor-
   mant and a suspect by simultaneously recording it on a tape
   does not violate the constitutional prohibition against unrea-
   sonable searches and seizures where the informant received the
   information by engaging the suspect in a conversation without
   violating any of his constitutional rights.*

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William F. Delhey,*
Prosecuting Attorney, and *James S. Sexsmith,*
Senior Assistant Prosecuting Attorney, for the
people.

*Fred K. Persons,* for defendant on appeal.

Before: DANHOF, C.J., and BRONSON and M. F.
CAVANAGH, JJ.

BRONSON, J. Defendant was convicted by a jury
of delivery of heroin contrary to MCL 335.341(1)(a);
MSA 18.1070(41)(1)(a). He now appeals as of right.
Although defendant raises numerous issues, our
disposition of one of them makes consideration of
the remaining questions unnecessary.

At trial, the court admitted, over defendant's
objection, a tape recording of a conversation be-
tween defendant and a police informant. No
search warrant had been obtained authorizing the
police to tape the conversation.

In *People v Beavers,* 393 Mich 554; 227 NW2d
511 (1975), *cert den,* 423 US 878; 96 S Ct 152; 46 L
Ed 2d 111 (1975), the Michigan Supreme Court
ruled that participant monitoring[1] by police is a
search and seizure which must comply with the
warrant requirement. In *People v Livingston,* 64

[1] Participant monitoring refers "to the use of an electronic device
by a participant of a conversation which transmits the exchange to a
third party". *Beavers, supra,* at 562, fn 2.

Mich App 247; 236 NW2d 63 (1975), this Court extended the search warrant requirement to instances where the informer/participant recorded the conversation instead of transmitting it.

The dissent disagrees with this latest extension and seeks to differentiate participant monitoring from participant recording by declaring that the former is more intrusive of privacy because the disclosure of the conversation is simultaneous with the conversation itself. It is true that there is no simultaneous disclosure in participant recording; however, there is a countervailing consideration which makes participant monitoring equally intrusive, and that is the fact that with participant recording a permanent record of the conversation is made. See Greenawalt, *The Consent Problem in Wiretapping and Eavesdropping: Surreptitious Monitoring With the Consent of a Participant in a Conversation,* 68 Col L Rev 189, 225, fn 180 (1968). One does not need to go back too far in the history of this country to find instances where an innocent or innocuous statement when made, takes on grave and sinister overtones 10 or 20 years later when the social climate has changed. The fact that a recording of a conversation could be permanently stored and then produced long after the participants or their monitors forgot about the conversation makes participant recording just as intrusive of privacy as participant monitoring, and subject to the same restrictions on its use.

The rationale for requiring a search warrant in these situations was stated most eloquently by Justice Harlan in *United States v White,* 401 US 745, 787-789; 91 S Ct 1122; 28 L Ed 2d 453 (1971). Although these statements were directed at participant monitoring, we conclude that their logic

applies equally as well to the analogous problem of participant recording.[2]

"The impact of the practice of third-party bugging, must, I think, be considered such as to undermine that confidence and sense of security in dealing with one another that is characteristic of individual relationships between citizens in a free society. * * *

"Authority is hardly required to support the proposition that words would be measured a good deal more carefully and communication inhibited if one suspected his conversations were being transmitted and transcribed. Were third-party bugging a prevalent practice, it might well smother that spontaneity—reflected in frivolous, impetuous, sacrilegious, and defiant discourse —that liberates daily life. Much off-hand exchange is easily forgotten and one may count on the obscurity of his remarks, protected by the very fact of a limited audience, and the likelihood that the listener will either overlook or forget what is said, as well as the listener's inability to reformulate a conversation without having to contend with a documented record. All these values are sacrificed by a rule of law that permits official monitoring of private discourse limited only by the need to locate a willing assistant."

---

[2] We are aware that eight years prior to *White* Justice Harlan upheld warrantless participant recording in *Lopez v United States,* 373 US 427; 83 S Ct 1381; 10 L Ed 2d 462 (1963). Justice Harlan himself acknowledged, however; that due to his opinion in *White,* the continued validity of *Lopez* might be open to question. *White* at 788, fn 24. We also note that there is a significant distinction between the participant recording in *Lopez* and the one that happened in the present case. In *Lopez* the recording was done by a person who the defendant knew was a government agent. Although we do not now need to decide whether this distinction would cause us to reach a different result, it must be recognized that there is a considerable difference in a person's expectations concerning whether the contents of his conversation will go beyond the participants in instances where an individual knows he is talking to a government agent, and in situations where he thinks he is talking to a private citizen. Justice Harlan also recognized this distinction, and stated that it "may provide a focus for future distinctions [from *Lopez]". White* at 788, fn 24. Therefore, given his strong stand in *White* and his recognition of the unique relationship of the parties in *Lopez,* Justice Harlan's position in *Lopez* cannot be used as unequivocal support for all warrantless participant recordings.

How different life in this state would be if everyone had to expect that their every conversation, their every careless phrase or ill-advised statement could be captured and preserved for all time. Such a life-style is not what is expected nor desired by the members in a free society. A rule which would allow government officials to record, at their unbridled discretion, the conversations of all citizens with whom they or their informants come into contact would impermissibly invade the individual's right to privacy and constitute a violation of the Michigan Constitution's prohibition against unreasonable searches and seizures.

Therefore, before the police may lawfully tape a conversation between an individual and a police informant, they must first obtain a search warrant authorizing the recording of the conversation.

The dissent seems to intimate that by requiring a search warrant we will be totally precluding the use of participant recording thus depriving the police of a valuable investigative tool.[3] This assessment is not accurate. Under the rule announced here, the use of participant recording will not be precluded but merely limited to situations where the potential benefits to society in fighting crime outweigh the potential detriments to society from stifling free expression. The dissent would allow recording on the mere whim of any government official. It appears to sanction fishing expeditions

---

[3] The dissent seemingly believes that our opinion will prohibit police from recording calls that come into the police station or to emergency numbers. Again, however, one must look to the expectations of the nonrecording party. A person who initiates a call to a police department in order to obtain help or information expects that his call will be transcribed or otherwise recorded by the person called and then transmitted to whomever is necessary so that assistance may be forthcoming. An individual who engages in a private conversation with another does not expect that his conversation will be recorded and then broadcast to others. Therefore, nothing in this opinion will preclude police from recording phone calls to police stations and emergency numbers.

based on no more than the hope that criminal activity can be found. This is unacceptable. Our constitution protects our citizens from the excesses caused by misguided or overzealous government officials. The inconvenience caused by requiring government officials to submit reliable information to a neutral magistrate for a determination that there is probable cause to believe criminal activity is under way will be more than made up by the increased sense of security and freedom such a rule will provide for citizens of this state. As our Supreme Court stated in *Beavers:*

"By interposing the search warrant requirement prior to engaging in participant monitoring, the risk that one's conversation is being intercepted is rightfully limited to circumstances involving a party whose conduct has provided probable cause to an independent magistrate to suspect such party's involvement in illegal activity. The warrant requirement is not a burdensome formality designed to protect those who would engage in illegal activity, but, rather, a procedure which guarantees a measure of privacy and personal security to *all* citizens. The interests of both society and the individual should not rest upon the exercise of the unerring judgment and self-restraint of law enforcement officials. Our laws must ensure that the ordinary, law-abiding citizen may continue to engage in private discourse, free to speak with the uninhibited spontaneity that is characteristic of our democratic society." *Beavers,* at 566.

Since the police in this case did not obtain a search warrant authorizing the recording of the conversation, the recording was the result of an illegal search and seizure and the trial court erred in admitting it into evidence.[4] The defendant's conviction must be reversed.

---

[4] Since it is the recording, not the participant's testimony which is inadmissible, the participant may still testify concerning the contents of the conversation. See *Beavers, supra,* at 567.

Reversed.

M. F. Cavanagh, J., concurred.

Danhof, C.J. *(dissenting).* On November 24, 1976, after a jury trial, defendant was convicted of delivery of a controlled substance, heroin, in contravention of MCL 335.341(1)(a); MSA 18.1070(41)(1)(a). Defendant was sentenced to a term of one year in prison and appeals as of right. This case arose out of an incident occurring on July 31, 1975, in which defendant allegedly sold heroin to a police informer at a pool hall. The transaction was recorded by a tape recorder which was hidden on the informer's person. At trial, the informer testified that defendant delivered heroin to him. The tape recording of the transaction was also introduced into evidence.

On appeal, defendant claims that the trial court erred in admitting this tape recording into evidence. He contends that the participant's recording of the conversation was an unreasonable search and seizure prohibited by Const 1963, art 1, § 11, since there was no search warrant authorizing the recording or any exigent circumstances, see *People v Beavers,* 393 Mich 554; 227 NW2d 511 (1975). The prosecutor argues that no search warrant is required for a participant's recording of a conversation, see *United States v White,* 401 US 745; 91 S Ct 1122; 28 L Ed 2d 453 (1971), *People v Drielick,* 400 Mich 559; 255 NW2d 619 (1977).

As a matter of Federal constitutional law, US Const, Ams IV, XIV, no search warrant is required for participant recording, *Lopez v United States,* 373 US 427; 83 S Ct 1381; 10 L Ed 2d 462 (1963), or participant monitoring, *United States v White,* 401 US 745; 91 S Ct 1122; 28 L Ed 2d 453 (1971). In *Beavers, supra,* the Michigan Supreme Court

interpreted the Michigan constitutional provision governing searches and seizures, Const 1963, art 1, § 11, to apply the search warrant requirement to participant monitoring. Participant monitoring was defined to mean the use of an electronic device by a participant to transmit the exchange to a third party. The opinion did not address the constitutionality of participant recordings, *Beavers, supra,* at 562, fn 2. The issue to be resolved in this case is whether to extend the constitutional rule announced in *Beavers* to participant recordings.[1] In *Beavers, supra,* the Court held that the Michigan constitution provided additional protections not offered by the Federal constitution. The Court was

"persuaded by the logic of Justice Harlan which recognizes a significant distinction between assuming the risk that communications directed to one party may subsequently be repeated to others and the simultaneous monitoring of a conversation by the uninvited ear of a third party functioning in cooperation with one of the participants yet unknown to the other." *Beavers, supra* at 565.[2]

Applying this reasoning to the facts in this case, I conclude that participant recording is distinguishable from participant monitoring. Participant monitoring involves simultaneous transmissions of

[1] When the phrase "participant recording" appears, I am specifically referring to the use of an electronic device by a participant of a conversation which records the conversation. Although I recognize that the technological advances in electronic surveillance equipment raise many complex issues, this opinion addresses only the specific issues raised by the facts in this case.

[2] In Justice Harlan's words, "it is one thing to subject the average citizen to the risk that participants in a conversation with him will subsequently divulge its contents to another, but quite a different matter to foist upon him the risk that unknown third parties may be simultaneously listening in." *United States v White,* 401 US 745, 777; 91 S Ct 1122; 28 L Ed 2d 453 (1971).

the conversation to third parties. The participant has no control, other than to turn off the monitor, over whether any disclosures should be made or over what should be disclosed. Everything and anything is automatically, simultaneously disclosed to the uninvited third ear. This is the feature of participant monitoring which makes it particularly offensive. Even if the participant can disengage the monitor, this does not give him effective control over the extent of simultaneous disclosures. Most participants will not know what is going to be said until it is said. However, because participant monitoring involves simultaneous transmissions, any decision to disengage a monitor to limit disclosures must be made before the statement, which the participant does not want disclosed, is made. Since the participant will not know what is going to be said before the other person says it, he does not have effective control over the disclosures.

Participant recording does not involve these same concerns. There is no simultaneous disclosure to third parties.[3] Participant recording merely preserves the conversation in a more reliable form. If any disclosures are made, they will be because the participant decided, after hearing the conversation, to make them. The participant is in a position, after hearing the conversation, to decide if any disclosures are made and the extent of any disclosures. For these reasons, participant recording is more analogous to the concept of misplaced confidence than participant monitoring.

The misplaced confidence doctrine applied in

---

[3] Although Justice Brennan perceived the tape recorder as the equivalent of the uninvited ear of a third party, see, *Lopez v United States*, 373 US 427, 448; 83 S Ct 1381; 10 L Ed 2d 462 (1963), there are significant differences between recording a conversation and simultaneously transmitting it to a third party.

*Hoffa v United States,* 385 US 293; 87 S Ct 408; 17 L Ed 2d 374 (1966), means that no matter how strongly one trusts an apparent colleague, his expectations in this respect are not constitutionally protected by the Fourth Amendment when it turns out that the colleague is a government agent regularly communicating with the government. It is undisputed that the undercover officer who was a participant to these conversations due to defendant's confidence in him could later disclose this transaction to the police or at trial. Neither the agent's method of securing this information nor his later disclosures of it violated the constitutional prohibition against unreasonable searches and seizures, *Hoffa, supra.* The only difference between *Hoffa, supra,* and the instant case is that evidence of this conversation was preserved by employing a tape recorder. Therefore, defendant must be claiming that this investigative procedure constituted an unreasonable search and seizure solely because this evidence, legitimately received, was preserved by means of a tape recorder. However, this same argument was rejected in *Lopez, supra.* Writing for the majority in *Lopez, supra,* Justice Harlan stated:

"Stripped to its essentials, petitioner's argument amounts to saying that he has a constitutional right to rely on possible flaws in the agent's memory, or to challenge the agent's credibility without being beset by corroborating evidence that is not susceptible of impeachment. For no other argument can justify excluding an accurate version of a conversation that the agent could testify to from memory. We think the risk that petitioner took in offering a bribe to Davis fairly included the risk that the offer would be accurately reproduced in court, whether by faultless memory or mechanical recording." *Lopez, supra* at 439.[4]

---

[4] In *People v White, supra,* 788, fn 24, Justice Harlan acknowledged

In terms of risk analysis, participant monitoring subjects people to greater risks than participant recording and the concept of misplaced confidence. Both participant monitoring and participant recording are variants of assuming the risk of misplaced confidence, but the risks of participant monitoring are greater. Allowing participant monitoring subjects one to the risk that his confidence may be betrayed even before the conversation occurs. It subjects him to the risk that the participant may have decided, a priori, to simultaneously disclose the conversation to third parties without effective means to control the extent of disclosure. For this reason, participant monitoring is distinguishable from the concept of misplaced confidence.

Participant recording does not subject one to these risks of simultaneous disclosure without effective means to control the extent of disclosure. The only difference between participant recording and the traditional concept of misplaced confidence is that evidence of the conversation is preserved. For this reason, the risks involved in participant recording are more analogous to the risks of misplaced confidence than the risks involved in participant monitoring. Although allowing participant recording, as contrasted with the traditional

---

that this reasoning might be open to question. He stated that the focus of the risk analysis should not be on whether the information is accurately reproduced but rather on the impact of the particular investigatory practice on the individual's sense of security which is the major concern of the Fourth Amendment's protection. I agree with Justice Harlan's analysis of the issues and risks involved. To focus on the risk of accurate reproduction would validate even the warrantless monitoring condemned in *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 576 (1967), because the conversation seized in that case was accurately reproduced. The search and seizure clause is not directly concerned with whether the information is accurately reproduced at trial but rather it is concerned with the procedures employed in acquiring the information.

concept of misplaced confidence, exposes the
speaker to the additional risk that his conversa-
tion may be accurately reproduced, this risk is not
so substantial as to warrant constitutional signifi-
cance.

This analysis which leads to the conclusion that
participant recording is distinguishable from par-
ticipant monitoring is consistent with Justice Har-
lan's analysis. He also distinguishes participant
recording from participant monitoring.[5] He au-
thored the majority opinion in *Lopez, supra,* which
upheld participant recording. He dissented in
*White, supra,* which approved of participant moni-
toring. In distinguishing these two cases, Justice
Harlan noted that in *Lopez, supra,* the tape was
only used to corroborate the agent's testimony and
that participant recording did not subject the
speaker to any risks he had not fairly assumed,
see *White, supra,* at 776. Justice Harlan also noted
that there was no uninvited third ear in partici-
pant recording, *White, supra,* at 784.

Another factor which distinguishes this case
from *Beavers, supra,* is that the monitoring in
*Beavers, supra* was of a conversation which took
place in the defendant's home. This fact was em-
phasized twice in *Beavers, supra,* at 563, 565-6.
Although the right to privacy protects people, not
places, see *Katz v United States,* 389 US 347; 88 S
Ct 507; 19 L Ed 2d 576 (1967), the right to privacy
takes on special significance when one is in his
own home. This is where a person's justifiable
expectation of privacy is the greatest. This signifi-

---

[5] "Distinctions do, however, exist between *Lopez* where a known
Government agent uses a recording device, and in this case which
involves third-party overhearing. However unlikely that the partici-
pant recorder will not play his tapes, the fact of the matter is that in
a third-party situation the intrusion is instantaneous." *White, supra*
at 788, fn 24.

cance is recognized in our state constitution.[6] The conversation in the instant case occurred in a pool hall open to the public. Defendant's justifiable expectation of privacy was not as great in this situation as compared to conversations which are conducted in the privacy of one's own home.

Recognizing that the participant recording in this case is distinguishable from the participant monitoring in *Beavers, supra,* in a number of respects, the issue remains as to whether this investigative technique violated the constitutional prohibition against unreasonable searches and seizures because there was no search warrant authorizing this recording. In Justice Harlan's words:

"The critical question, therefore, is whether under our system of government, as reflected in the Constitution, we should impose on our citizens the risks of the electronic listener or observer without at least the protection of a warrant requirement.

"This question must, in my view, be answered by assessing the nature of a particular practice and the likely extent of its impact on the individual's sense of security balanced against the utility of the conduct as a technique of law enforcement." *White, supra,* at 786.

The fact that participant recording has great utility as a technique of law enforcement is well recognized, see, *Beavers, supra,* at 566, 571. The recording of conversations which the police participate in can assist the police in many ways. This is especially true in investigations into the trafficking of narcotics, see *Beavers, supra,* at 571. The recording and preservation of constitutionally ac-

---

[6] Although not directly applicable to the facts in this case, Const 1963, art 1, § 11, recognizes the importance of privacy in one's own home. It states, "[t]he provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house in this state."

quired information not only helps the government prepare for trial but it can also ensure that ongoing investigations are not hindered by inaccurate perceptions or faulty memories.[7] The recordings cannot only corroborate an officer's testimony when a defendant denies the truth of that testimony but they can also be useful in rebutting charges of recent fabrication, entrapment or improper influence. The recordings might also protect officers from unjustifiable claims of harassment, brutality, taking bribes or other improper conduct.

The recognized utility of this investigative technique must be balanced against its impact on the security and privacy of the individuals in our society. I realize that allowing participant recording without a warrant subjects not only criminals and people contemplating criminal activities but all citizens to the possibility that a participant might be recording their conversation without imposing the protections offered by the search warrant requirement. However, it must be emphasized that the issue in this case involves only a participant's recording of a conversation directed towards him. In regard to its impact on society, participant recording is distinguishable from the concept of misplaced confidence only by the fact that the conversation being disclosed is preserved on tape. Although the majority proceeds on the

---

[7] One of the primary uses of participant recording by the police involves the recording of phone calls to the police. Numerous phone calls are made to the police each day reporting crimes and emergencies, relaying tips concerning ongoing investigations and other useful information. Many of these calls are made by people who are excited or under stress and, accordingly, speak quickly but not clearly. Some of these calls are recorded to guard against the possibility that vital information might be lost simply because the person answering the phone cannot transcribe the information as fast as the speaker talks. To require a warrant before the police could record this information would unjustifiably hamper a legitimate police practice.

assumption that the preservation of conversations will chill spontaneous discussions, see, *White, supra,* at 762-763, and *Lopez, supra,* at 449, I conclude that any possible chilling of free expression is not unjustifiable. Since the officer received this information by engaging defendant in a conversation without violating any of his constitutional rights, I would hold that the officer's preservation of this information by simultaneously recording it on a tape recorder did not violate the constitutional prohibition against unreasonable searches and seizures, US Const, Ams IV, XVI; Const 1963, art 1, § 11. Accordingly, I respectfully dissent.

The other issues raised by defendant do not warrant reversal or discussion. Defendant's conviction should be affirmed.