STATE OF HAWAII, Plaintiff-Appellant, *v.* ROY OKUBO and
GEORGE YAMAMOTO, Defendants-Appellees

NO. 8286

(CRIMINAL NO. 55122)

SEPTEMBER 30, 1982

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

Defendants-Appellees Roy Okubo and George Yamamoto (defendants) were indicted respectively for 7 and 19 counts of bribery in violation of § 710-1040(1)(a) of the Hawaii Revised Statutes (HRS) (1976). The defendants were accused of paying two Honolulu police officers for information of impending police raids on an alleged massage parlor establishment. During the pretrial proceedings, the lower court judge partially granted defendants' motion to suppress

evidence brought under Rule 12(b), Hawaii Rules of Penal Procedure (1977) (HRPP). The evidence suppressed consists of recordings of the audio portion of face-to-face and telephone conversations between the defendants and the police officers. The evidence not suppressed consists of videotapes of the visual portion of some of the conversations.[1] The judge's written decision and order filed on September 4, 1981 held that the warrantless recordings of the audio portion of all conversations "were the product of 'unreasonable searches, seizures and invasions of privacy' in violation of article I, section 7" of the Hawaii Constitution. Recordings of the audio portion of the face-to-face conversations were suppressed on the additional ground that they were obtained in violation of Hawaii's Eavesdropping Law, HRS Chapter 803, Part IV.

Pursuant to HRS §§ 641-13(7) (Supp. 1981)[2] and 602-5(1) (1976), the State appeals the lower court's ruling. The essence of the State's argument is that the participant or consensual monitoring and recording[3] of the conversations did not violate any reasonable

---

[1] The lower court's order granting the defendant's motion to suppress stated, *inter alia*, "Videotapes, if used in conjunction with the aforesaid tainted audio recordings, are suppressed; otherwise the videotapes are not suppressible on constitutional or statutory grounds on the facts of this case."

[2] Section 641-13(7), HRS, provides:

§ 641-13 *By State in criminal cases.* An appeal may be taken by and on behalf of the State from the district or circuit courts to the supreme court, subject to chapter 602, in all criminal cases, in the following instances:

\* \* \* \*

(7) From a pre-trial order granting a motion for the suppression of evidence, including a confession or admission, or the return of property in which case the intermediate appellate court or the supreme court, as the case may be, shall give priority to such an appeal and the order shall be stayed pending the outcome of the appeal;

\* \* \* \*

provided that no appeal shall be taken by or allowed the State in any case where there has been a verdict in favor of the defendant.

[3] We note that other courts have used various terms to describe electronic surveillance activities. In this opinion, however, we use the term "participant recording" to refer specifically to situations where a participant himself records the conversation. In consensual recording cases, a third party records a conversation with the consent of a participant. Likewise, in consensual monitoring cases, a third-party listens to conversations with the consent of a participant. The term "participant or consensual monitoring and recording" is used in this opinion to encompass the three situations above.

expectations of privacy held by the defendants, that there was no invasion of privacy nor was a warrant required under either the Hawaii or the United States constitutions, and that the warrantless electronic recordings of the audio portion of the conversations did not violate HRS Chapter 803, Part IV, because they were made with the consent of at least one of the parties to the conversations. We agree with the State and, therefore, reverse the ruling of the court below.

The evidence sought to be suppressed consists of videotapes of approximately 13 meetings and audio tapes of approximately 40 conversations among the defendants and Police Officers Richard Nagao and Ronald Higa over a period of seven months. Four separate methods were used to obtain the evidence:

(1) A participant-police officer wore a "Nagra" brand *body tape recorder* which recorded face-to-face conversations;

(2) A participant-police officer permitted telephone conversations to be recorded with an *audio recorder attached to the phone* which the officer was using;

(3) A participant-police officer wore a *transmitter,* which simultaneously broadcasted face-to-face conversations to other police officers who monitored and recorded the conversations, sometimes in conjunction with videotape recordings and sometimes not; and

(4) The monitoring police officers *videotape recorded* the face-to-face conversations among Officers Nagao and Higa and the defendants.

The recordings and videotapes were made with the knowledge and consent of Officers Nagao and Higa. The defendants, however, had no knowledge of and did not consent to the monitoring and recording of the conversations. No judicial warrant or order authorizing the monitoring and recording of the conversations was obtained by the police. Both defendants testified that they knew that Nagao and Higa were police officers. Defendant Yamamoto further testified that he knew of the police officers' duty to uphold the law.

Audio and video recordings were made of a crucial meeting held on January 9, 1980 at Beretania Saimin, a restaurant open to the public, where the defendants and the officers agreed on the amount of the monthly payments to be paid by the defendants for the officers' assistance. Defendant Yamamoto testified that the parties

sat at a table about 20-30 feet away from the other customers in the restaurant. Because of the nature of the conversations, the parties spoke in low tones to prevent others from hearing. Defendant Yamamoto, however, admitted that other customers could reasonably have heard what was being said.

The issues before this court are:

(1) Whether the warrantless recording and monitoring of conversations among the defendants and police officers with only the latters' knowledge and consent violated the defendants' right to privacy under either article I, section 6 or article I, section 7 of the Hawaii Constitution (1978). We answer no.

(2) Whether the warrantless recording and monitoring of conversations among the defendants and police officers with only the latters' knowledge and consent violated HRS Chapter 803, Part IV (Supp. 1981). We answer no.

Article I, section 6 of the Hawaii Constitution states:

## RIGHT TO PRIVACY

Section 6. The right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest. The legislature shall take affirmative steps to implement this right.

Article I, section 7 of the Hawaii Constitution states:

## SEARCHES, SEIZURES AND INVASION OF PRIVACY

Section 7. The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized or the communications sought to be intercepted.

The reasons for adopting article I, section 7 (previously known as article I, section 5)[4] were explained by the Committee on Bill of

---

[4] Article I, section 5 was renumbered to article I, section 7 following the 1978 Constitutional Convention and ratification of November 7, 1978.

Rights, Suffrage and Elections of the 1968 Constitutional Convention as follows:

Several proposals sought to secure all persons against unreasonable interceptions of their communications or other invasions of their privacy. Your Committee recognizes the need for certain protections of the individual's right to privacy in the context of today's society. The tremendous growth of the electronic communications technology along with a corresponding growth of electronic surveillance techniques makes possible the ready encroachment upon a person's private conduct and communication. The recently enacted Hawaii statute prohibiting wiretapping and eavesdropping by private persons as well as law enforcement officials protects the individual's communications from interception, and your Committee recognizes that the legislature took proper initiative to legislate protection in that area under our existing constitutional provision. Recent United States Supreme Court decisions have also enlarged and delineated the individual's protection against wiretapping and eavesdropping. Your Committee believes that a specific protection against communications interception in the Constitution may be somewhat narrow and limiting and therefore recommends a broader protection in terms of right of privacy. . . .

Your Committee is of the opinion that inclusion of the term "invasions of privacy" will effectively protect the individual's wishes for privacy as a legitimate social interest. The proposed amendment is intended to include protection against indiscriminate wiretapping as well as undue government inquiry into and regulation of those areas of a person's life which are defined as necessary to insure "man's individuality and human dignity."

STAND. COMM. REP. NO. 55, 2d Hawaii Const. Conv., *reprinted in* I PROCEEDINGS OF THE CONSTITUTIONAL CONVENTION OF HAWAII OF 1968, at 233-234 (1972).

When the 1968 Constitutional Convention met, the United States Supreme Court had already held in *Lopez v. United States,* 373 U.S. 427 (1963),[5] that a government agent may, without a warrant

---

[5] In *Lopez v. United States,* 373 U.S. 427 (1963), an IRS agent wore a pocket wire recorder to record the conversation. The testimony of the agent as well as the recording of the conversation were held to be admissible into evidence.

and without defendant's knowledge or consent, record his own conversation with the defendant in the latter's private office and in *Katz v. United States,* 389 U.S. 347 (1967),[6] that the government may not bug a telephone booth without a warrant or without its user's consent. However, as the court below correctly noted, "the reports of the [1968] conversation and the debates do not clearly indicate a position on the part of the delegates with respect to consensual surveillance. . . ."

The 1978 Constitutional Convention redefined section 7, added section 6, and delineated the differences between the two right-to-privacy provisions. The report by the Committee on Bill of Rights, Suffrage and Elections states:

In 1968 the Constitution was amended to include the prohibition against unreasonable invasions of privacy, but its inclusion within a section patterned after the Fourth Amendment right against unreasonable searches and seizures and the debate during the 1968 constitutional convention have engendered some confusion as to the extent and scope of the right. Although it appears clear that the proponents of the concept saw the right as broader than one limited to protection against invasions of privacy in criminal cases, the convention devoted most of the debate to the relationship between the proposed amendment and concern over wiretapping. This has led the Hawaii supreme court to state that the privacy right emanated from a concern over extensive use of electronic surveillance, thus limiting the right to privacy by implying that it did not encompass the concept of a right to personal autonomy. *State v. Roy,* 54 H. 513, 510 P.2d 1066 (1973). Thus it may be unclear whether the present privacy provision extends beyond the criminal area. *Therefore, your Committee believes that it would be appropriate to retain the privacy provision in Article I, Section 5, but limit its application to criminal cases, and create a new section as it relates to privacy in the informational and personal autonomy sense.* [Emphasis added.]

---

[6] In *Katz v. United States,* 389 U.S. 347 (1967), FBI agents installed an electronic listening and recording device to the outside of a public telephone booth from which the defendant had placed his calls. Despite the lack of a physical trespass, the Court held that the warrantless electronic surveillance violated the defendant's fourth amendment rights.

STAND. COMM. REP. NO. 69, 3d Hawaii Const. Conv., *reprinted in* I PROCEEDINGS OF THE CONSTITUTIONAL CONVENTION OF HAWAII OF 1978, at 674 (1980).

Furthermore, in recommending the adoption of article I, section 6, the Committee of the Whole stated:

> To make clear its intent, your Committee would like to reiterate and elaborate on certain matters contained in Stand. Com. Rep. No. 69. *Should this section of the proposal be approved by the electorate, the Constitution will have two provisions related to privacy. However, the provisions are not to be construed as identical in intent. The privacy provision within Article I, Section 5, should be construed in light of the language in Katz v. United States, 389 U.S. 347, 88 S. Ct. 507, 19 L.Ed.2d 576 (1967), regarding reasonable expectation of privacy. Privacy as used in this sense is not a fundamental right but a test of whether the prohibition against unreasonable searches and seizures applies.*
>
> By amending the Constitution to include a separate and distinct privacy right, it is the intent of your Committee to insure that privacy is treated as a fundamental right for purposes of constitutional analysis. Privacy as used in this sense concerns the possible abuses in the use of highly personal and intimate information in the hands of government or private parties but is not intended to deter the government from the legitimate compilation and dissemination of data. More importantly, this privacy concept encompasses the notion that in certain highly personal and intimate matters, the individual should be afforded freedom of choice absent a compelling state interest. This right is similar to the privacy right discussed in cases such as *Griswold v. Connecticut,* 381 U.S. 479 (1965), *Eisenstadt v. Baird,* 405 U.S. 438 (1972), *Roe v. Wade,* 410 U.S. 113 (1973), etc. It is a right that, though unstated in the federal Constitution, emanates from the penumbra of several guarantees of the Bill of Rights. Because of this, there has been some confusion as to the source of the right and the importance of it. As such, it is treated as a fundamental right subject to interference only when a compelling state interest is demonstrated. By inserting clear and specific language regarding this right into the Constitution, your Committee intends to alleviate any possible confusion over the source of the right and the existence of it. [Emphasis added.]

COMM. OF THE WHOLE REP. NO. 15, 3d Hawaii Const. Conv., *reprinted in* I PROCEEDINGS OF THE CONSTITUTIONAL CONVENTION OF HAWAII OF 1978, at 1024 (1980).

This history makes it clear that the right-to-privacy provisions in article I, section 6 and article I, section 7 are distinct. As the final interpreter of the Hawaii Constitution, *State v. Santiago,* 53 Haw. 254, 265, 492 P.2d 657 (1971), the Hawaii Supreme Court has so held in *State v. Lester,* 64 Haw. 659, 649 P.2d 346 (1982).

This history also makes it clear that the right to privacy protected by article I, section 7 is not in the nature of a fundamental right. Rather, its application is limited to criminal cases and is to be construed in light of the language of *Katz v. United States, supra,* regarding reasonable expectations of privacy. *State v. Lester, supra,* slip op. at 9; COMM. OF THE WHOLE REP. NO. 15, *supra,* at 1024.

Consequently, we hold that article I, section 6 has no effect in this case. We hold further that article I, section 7 guarantees freedom from warrantless searches and seizures only to persons who are entitled to a reasonable expectation of privacy.

The test to determine whether a person is entitled to a reasonable expectation of privacy and freedom from a warrantless search and seizure was set forth by Justice Harlan in his concurrence in *Katz.* This test is: (1) has the person exhibited an actual, subjective expectation of privacy; and (2) is that expectation one which society is prepared to recognize as "reasonable." *Katz, supra,* at 361 (Justice Harlan, concurring).

What made the warrantless monitoring and recording unreasonable in *Katz* was the fact that the government listened to and recorded the defendant's conversation without the knowledge or consent of any party to the conversation. Warrantless monitoring and recording activities have been upheld by the Court, however, where a participant to the conversation has consented to those activities by the government. *United States v. Caceres,* 440 U.S. 741 (1979);[7] *United States v. White,* 401 U.S. 745 (1971);[8] *Lopez v. United*

---

[7] *In United States v. Caceres,* 440 U.S. 741 (1979), an IRS agent wore a concealed radio transmitter which allowed other agents to monitor and record conversations with the defendant. The Supreme Court allowed the recordings in evidence even though they were not made in conformance with IRS regulations.

[8] In *United States v. White,* 401 U.S. 745 (1971) (plurality opinion), a government informant consented to wearing a concealed radio transmitter which relayed con-

*States, supra.* As the Court stated in *United States v. Caceres, supra,* at 744, "Neither the Constitution nor any Act of Congress requires that official approval be secured before conversations are overheard or recorded by government agents with the consent of one of the conversants."

The rationale for allowing recordings to be made without a warrant and later allowed in evidence in participant or consensual recording and monitoring cases is that no eavesdropping is involved since the government sees or hears no more than the consenting person who was participating with the defendant's assent. *Lopez, supra,* at 439. Moreover, no constitutionally justifiable expectation of privacy is invaded where the consenting participant is free or may be compelled to disclose what was heard. As the Court stated in *White:*

> Our problem, in terms of the principles announced in *Katz* is what expectations of privacy are constitutionally "justifiable" — what expectations the Fourth Amendment will protect in the absence of a warrant. So far, the law permits the frustration of actual expectations of privacy by permitting authorities to use the testimony of those associates who for one reason or another have determined to turn to the police, as well as by authorizing the use of informants in the manner exemplified by *Hoffa* and *Lewis.* If the law gives no protection to the wrongdoer whose trusted accomplice is or becomes a police agent, neither should it protect him when that same agent has recorded or transmitted the conversations which are later offered in evidence to prove the State's case. *See Lopez v. United States,* 373 U.S. 427 (1963).
>
> \*   \*   \*   \*
>
> Nor should we be too ready to erect constitutional barriers to relevant and probative evidence which is also accurate and reliable. An electronic recording will many times produce a more reliable rendition of what a defendant has said than will the unaided memory of a police agent. It may also be that with the recording in existence it is less likely that the informant will change his mind, less chance that threat or injury will suppress unfavorable evidence and less chance that cross-examination will

---

versations to government agents. The testimony of government agents who had monitored and overheard the defendant's conversations was admitted in evidence.

confound the testimony. Considerations like these obviously do not favor the defendant, but we are not prepared to hold that a defendant who has no constitutional right to exclude the informer's unaided testimony nevertheless has a Fourth Amendment privilege against a more accurate version of the events in question.

*United States v. White, supra,* at 752-753.

As indicated by *White,* a policy consideration in support of participant or consensual recording is the creation and preservation of the best and most reliable evidence which will enable a court or jury to "determine the truth or falsity of the charges brought against the defendant." *Lopez, supra,* at 440; Commentary to section 4.1, American Bar Association's Standards Relating to Electronic Surveillance (Approved Draft 1971). It is for this reason that the American Bar Association has recommended the use of electronic surveillance techniques by law enforcement officers where one of the participants consents thereto. As the association recognized:

Traditionally, [the best and most reliable] evidence has consisted mainly of the testimony of witnesses who saw or heard what they later reveal in court. No man knows better, however, the fallibility of human testimony than that man who is trained in the law. The prospect that science through electronic surveillance techniques can provide us with evidence not subject to the frailties of human nature ought therefore, to be applauded. The use of such techniques in this area, in short, should be encouraged, not discouraged, and they should not be encumbered with administrative procedure.

For a recording will reproduce the very words spoken with all the added significance that comes from inflection, emphasis and the other aspects of oral speech. *** The goal of finding the truth in the criminal trial demands no less.

Commentary to section 4.1, American Bar Association Standards, *supra* (citations omitted).

It is the very accuracy and permanency of a recorded conversation, however, to which opponents of warrantless monitoring and recording activities object. In finding that participant recording is just as intrusive as consensual monitoring, the court, in *People v. Hall,* 88 Mich. App. 324, 276 N.W.2d 897 (1979), stated:

It is true that there is no simultaneous disclosure in participant

recording; however, there is a countervailing consideration which makes participant monitoring equally intrusive, and that is the fact that with participant recording a permanent record of the conversation is made . . . One does not need to go back too far in the history of this country to find instances where an innocent or innocuous statement when made, takes on grave and sinister overtones 20 or 30 years later when the social climate has changed. The fact that a recording of a conversation could be permanently stored and then produced long after the participants or their monitors forgot about the conversation makes participant recording just as intrusive of privacy as participant monitoring, and subject to the same restrictions on its use.

\* \* \* \*

How different life in this state would be if everyone had to expect that their every conversation, their every careless phrase or ill-advised statement could be captured and preserved for all time. Such a life-style is not what is expected nor desired by the members in a free society.

*Id.,* 88 Mich. App. at 328, 330, 276 N.W.2d at 897, 899.

The reason often given for objecting to a permanent recording made without the knowledge or consent of all participants is that the warrantless recordation of a private conversation infringes on individual expression. According to Justice Harlan's dissent in *White:*

Authority is hardly required to support the proposition that words would be measured a good deal more carefully and communication inhibited if one suspected his conversations were being transmitted and transcribed. Were third-party bugging a prevalent practice, it might well smother that spontaneity — reflected in frivolous, impetuous, sacrilegious, and defiant discourse — that liberates daily life. Much off-hand exchange is easily forgotten and one may count on the obscurity of his remarks, protected by the very fact of a limited audience, and the likelihood that the listener will either overlook or forget what is said, as well as the listener's inability to reformulate a conversation without having to contend with a documented record.

*United States v. White, supra,* at 787-788 (footnotes omitted).

Similarly, Justice Brennan dissented in *Lopez v. United States,*

*supra,* stating:

> [T]here is a grave danger of chilling all private, free, and uncon-
> strained communication if secret recordings turned over to law
> enforcement officers by one party to a conversation, are compe-
> tent evidence of any self-incriminating statements the speaker
> may have made. In a free society, people ought not to have to
> watch their every word so carefully.

*Id.,* 373 U.S. at 452, 83 S. Ct. at 1395.

However, while the opponents of warrantless participant or con-
sensual monitoring and recording activities condemn the chilling
effect of secret recordings, even they concede that a speaker has no
reasonable expectation that the person spoken to will not disclose
what was said.[9] As the Alaska Supreme Court stated in *State v. Glass,*
583 P.2d 872 (1978),[10] "Society is not willing to accept as reasonable
the subjective expectation of one engaged in a conversation that it
will not be repeated. For generations, while not condoning the
gossip or false friend, society has countenanced the repetition of
private conversations." *Id.* at 880.

Not only may a party to a conversation voluntarily disclose the
content of the conversation to third persons, but in the absence of an
applicable privilege claimed under article V of the Hawaii Rules of
Evidence, Chapter 626, Hawaii Revised Statutes (Supp. 1981), he
may be compelled in judicial proceedings to involuntarily disclose it.
Therefore, absent a privilege legitimately and effectively assertable
by the person seeking to prevent disclosure of his statements, society

---

[9] Although article I, section 6 of Hawaii's Constitution "concerns the possible
abuses in the use of highly personal and intimate information in the hands of
government or private parties," COMMITTEE OF THE WHOLE REP. NO. 15,
*supra,* we conclude that it does not give the speaker in a private conversation the right
or privilege of preventing the person spoken to from being compelled in criminal
judicial proceedings to disclose what was said.

[10] In *Glass,* the Alaska Supreme Court held that the consensual monitoring and
recording of the defendant's conversations without a warrant violated his right to
privacy under the Alaska Constitution. On the basis that participant electronic sur-
veillance constitutes an invasion of the common law right to privacy in civil litigation,
the court found that the defendant had a reasonable expectation that his conversation
would not be secretly recorded or broadcast. The supporting rationale is contra-
dictory to our holding that the common law right of privacy is encompassed only
under article I, section 6 of the Hawaii Constitution and is inapplicable in criminal
proceedings such as the case at bar.

deems unreasonable his expectation that another party to the conversation would not publicly repeat the contents thereof to others or could refuse to reveal it in court.

Consequently, we agree with the opinion of the United States Supreme Court in *Lopez* that:

[No person] has a constitutional right to rely on possible flaws in the agent's memory, or to challenge the agent's credibility without being beset by corroborating evidence that is not susceptible of impeachment. For no other argument can justify excluding an accurate version of a conversation that the agent could testify to from memory. We think the risk that petitioner took in offering a bribe to [the government agent] faily included the risk that the offer would be accurately reproduced in court, whether by faultless memory or mechanical recording.

*Lopez v. United States, supra,* 373 U.S. at 439 (footnote omitted).

Where the non-consenting participant does not have a reasonable expectation of privacy, the fact that the conversation was recorded by a participant or monitored and recorded by a third party with the consent of a participant is of no constitutional consequence. As the United States Supreme Court noted in *White:*

For constitutional purposes, no different result is required if the agent instead of immediately reporting and transcribing his conversations with the defendant, either (1) simultaneously records them with electronic equipment which he is carrying on his person, *Lopez v. United States, supra;* (2) or carries radio equipment which simultaneously transmits the conversations either to recording equipment located elsewhere or to other agents monitoring the transmitting frequency.

*United States v. White, supra,* at 751 (Justice White for the plurality).

The Hawaii Supreme Court held in *State v. Lester, supra,* that a conversation taped with the consent of only one of two participants may be admitted in evidence against the non-consenting participant. Recognizing that "[p]articipant or consensual monitoring has withstood constitutional scrutiny by the U.S. Supreme Court," the Hawaii Supreme Court concluded, "[W]e see no compelling reason to afford greater minimum protection to the instance at hand." *Lester, supra,* slip op. at 5, 7.

Consequently, with respect to participant or consensual monitoring and recording, the difference in language between the United

States Constitution and the Hawaii Constitution does not cause a different standard or a different result.

In concluding that Lester had no reasonable expectation of privacy, the plurality opinion cited the United States Supreme Court decisions in *Lopez, White,* and *Caceres.* No mention was made, however, of Lester's actual expectations of privacy nor of any other factors in the case to explain why Lester was not entitled to a reasonable expectation of privacy.

Nonetheless, we interpret *Lester* as authority for the following statement of the law: Regardless of a defendant's actual or subjective expectations of privacy, society finds it unreasonable for him or her to expect that another party, who cannot legally be silenced by the defendant, would not repeat to others or could refuse to reveal in court the content of a conversation with the defendant. A recording made with a participant's consent merely preserves the best and most reliable evidence of what occurred during the conversation and thus serves to enhance the truth-finding function of the court. Therefore, as a per se rule, the state does not need a warrant to record a conversation if it has the prior consent of a participant to record the conversation, provided that the participant who consented cannot legally be silenced by a non-consenting participant.

In the case at bar, we hold that defendants Okubo and Yamamoto had no reasonable expectation of privacy. Even if they had exhibited an actual, subjective expectation of privacy, society does not find reasonable their expectation that the other parties to the face-to-face or telephone conversations would not repeat their content to others or could not be compelled to reveal it in court. The fact that the defendants knew they were speaking to police officers, who are under a duty to enforce the law, lends additional support to but is not determinative of the objective unreasonableness of their expectations in this case.

Because the defendants have failed to meet the second part of the *Katz* test, the electronic search and seizure of the conversations undertaken with the prior consent of Officers Nagao and Higa did not violate the defendants' constitutional rights. Therefore, under both the United States Constitution and the Hawaii Constitution, no warrant was required before Officers Nagao and Higa could record the defendants' statements. *State v. Lester, supra; State v. Pilago,* 65 Haw. 22, 649 P.2d 363 (1982).

Nor did the transmission of the parties' face-to-face conversations to other officers equipped with a receiver and recorder violate the defendants' reasonable expectation of privacy. Having already determined that the defendants were not entitled to a reasonable expectation of privacy, the fact that the conversations were monitored and recorded by others is of no consequence. *United States v. White, supra,* at 751.

We note that the videotapes of the defendants' meetings with Officers Nagao and Higa are constitutionally permissible on additional grounds. Under the "open view" doctrine espoused by the Hawaii Supreme Court, "[n]o reasonable expectation of privacy can be asserted with respect to an object or activity which is open and visible to the public when the presence of members of the public may reasonably be anticipated." *State v. Brighter,* 60 Haw. 318, 322 (1979), citing *State v. Stachler,* 58 Haw. 412, 570 P.2d 1323 (1977). The facts indicate that all videotapes were taken of meetings held in "open view."

The final issue to be decided is whether Hawaii's Wiretap Law, HRS Chapter 803, Part IV, was violated by the warrantless monitoring and recording undertaken with the consent of participants to the conversations in question. We cite *Lester* and hold that there was no violation.

As the Hawaii Supreme Court found in *Lester,* HRS § 803-42(b)(3)[11] explicitly allows the interception of a wire or oral communication where a participant has given prior consent to the interception.[12] *Lester, supra,* at 10. Hawaii Revised Statutes § 803-42(b)(3) states, *inter alia:*

It shall not be unlawful under this part for a person to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception[.]

---

[11] The decision in *Lester* mistakenly referred to HRS § 803-42(3) in quoting § 803-42(b)(3).

[12] Additional support for this interpretation may be found in an article by Professor Addison M. Bowman, *Hawaii's Wiretap Law,* 14 Hawaii Bar J. No. 3 (Fall 1978), wherein he states: "Surveillance with consent of one of the parties to the communication apparently does not require court approval." *Id.,* n.33 (citations omitted).

The defendants argue and the court below found that the definition of "intercept"[13] is limited to the aural acquisition of *wire* communications so that the exception of § 803-42(b)(3) is not applicable to the monitoring and recording of face-to-face or wireless oral communications in the case at bar. Such an interpretation, however, would likewise require us to find that HRS § 803-42(a) does not prohibit in the first place the monitoring and recording of wireless conversations because the same language is used there.[14]

We are not persuaded by the defendants' argument. Moreover, our supreme court's decision in *Lester* is controlling. Thus, we hold that there was no violation of HRS Chapter 803, Part IV, since participants to the recorded conversations consented to the monitoring and recording thereof.

We reverse in part the lower court's Decision and Order Re: Motion to Suppress Audio and Video Tapes and rule that the audio recordings of conversations, made with the prior consent of at least one of the participants thereto, and the videotapes used in conjunction with the audio recordings should not have been suppressed. We affirm the portion of the order which held that the videotapes, by themselves, are not suppressible.

---

[13] Section 803-41(3), HRS (Supp. 1981), states: "Intercept means the aural acquisition of the contents of any wire communication through the use of any electronic, mechanical, or other device[.]"

[14] Hawaii Revised Statutes § 803-42(a) (Supp. 1981) provides:
  § 803-42 *Interception and disclosure of wire or oral communications prohibited.* (a) Except as otherwise specifically provided in this part any person who:
    (1) Wilfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire or oral communication;
    (2) Wilfully uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any wire or oral communication;
    (3) Wilfully discloses, or endeavors to disclose, to any other person the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection; or
    (4) Wilfully uses, or endeavors to use, the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection;
  shall be guilty of a class C felony.

Reversed and remanded for further proceedings consistent herewith.

*Edward H. Kubo, Jr.,* Deputy Prosecuting Attorney, for plaintiff-appellant.

*Bruce M. Ito* and *Gary T. Hayashi (James E. T. Koshiba* with them on the brief; *Koshiba & Young*) for defendants-appellees.

CONCURRING OPINION OF TANAKA, J.

I concur in the judgment of the court, but not for the reasons set forth in the majority opinion. *Stare decisis* compels my concurrence.

As set forth in the majority opinion, the case involved four methods used by the police in obtaining evidence without warrants:

(1) A participant-police officer wore a body tape recorder, which recorded face-to-face conversations (hereinafter "participant recording");

(2) A participant-police officer permitted telephone conversations to be recorded with an audio recorder attached to the telephone which he was using (hereinafter "participant bugging");

(3) A participant-police officer wore a transmitter, which simultaneously transmitted face-to-face conversations to monitoring police units which recorded the conversations (hereinafter "third-party recording"); and

(4) Monitoring police units videotaped the face-to-face meetings (hereinafter "videotape"). The audio sounds for the videotaped records were provided by the transmitter described in (3) above.

*State v. Lester,* 64 Haw. 659, 649 P.2d 346 (1982) and *State v. Pilago,* 65 Haw. 22, 649 P.2d 363 (1982), force my reluctant concurrence in the majority's decision regarding the question of the suppression of audio recordings obtained by participant recording and participant bugging. *Lester* involved participant recording, and *Pilago* dealt with both participant bugging and participant recording. Our supreme court held in *Lester* and *Pilago* that the warrantless participant recording and participant bugging did not violate the

fourth amendment of the U.S. Constitution,[1] article I, sections 6 and 7 of the Hawaii Constitution[2] and HRS chapter 803, part IV (Supp. 1981) ("Electronic Eavesdropping"). As a member of an inferior appellate court, the authority of *Lester* and *Pilago* is binding on me.

Third-party recording was not involved in *Lester* and *Pilago*. Justice Menor stated in his concurring opinion in *Lester*,

> Had this been a situation, however, where there had been a simultaneous transmission of the conversation to other hidden and listening enforcement agents, I would have been constrained to find otherwise.

64 Haw. at 674, 649 P.2d at 357. However, in his concurrence, Justice Menor accepted the construction given by the court to article I, section 7 of the Hawaii Constitution (hereinafter "section 7"). He agreed that "the principles enunciated in *Katz v. United States,* 389 U.S. 347 (1967), must govern the disposition of the constitutional issue involving the surreptitious recording." *Lester,* 64 Haw. at 672, 649 P.2d at 355.

Applying the "reasonable expectation of privacy" test to the facts in this case, I reach the same result as the majority. Thus, the ruling in *Lester,* which I am forced to accept, compels my concurrence in the majority's holding that the lower court erred in suppressing the audio recordings obtained by third-party recording and the video tapes used in conjunction with such recordings.

If this were a case of first impression, I would have dissented. I am convinced by and embrace the rationale of Justice Nakamura in his dissenting opinion in *Lester.* When section 7 (then section 5)[3] was amended during the Constitutional Convention of Hawaii of 1968, the framers meant to protect the individual against indiscriminate wiretapping or electronic eavesdropping. The protection devised was the requirement of a warrant to be issued "upon probable cause,

---

[1] U.S. Const. amend. IV. The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[2] See p. 399 of majority opinion.

[3] See note 4 of majority opinion.

supported by oath or affirmation, and particularly describing . . . the communications sought to be intercepted." What was discriminate or indiscriminate was to be determined "before the fact" by a neutral and detached judge interposed between the police and the public. *See Johnson v. United States,* 333 U.S. 10 (1948).

I am not convinced that the privacy provision of section 7 "should be construed in light of the language in *Katz v. United States,* 389 U.S. 347, 88 S. Ct. 507, 19 L.Ed.2d 576 (1967), regarding reasonable expectation of privacy." Comm. Whole Rep. No. 15, 3d Hawaii Const. Conv., *reprinted in* I Proceedings of the Constitutional Convention of Hawaii of 1978, at 1024. The 1978 Constitutional Convention adopted a new article I, section 6, but never touched section 7. Not being the framers of amended section 7, its construction of section 7 is not binding.[4]

If the framers, in amending section 7 in 1968, intended that the privacy provision was to "be construed in light of the language in *Katz v. United States,*" no amendment was necessary. The fourth amendment of the U.S. Constitution and original section 7 (then section 5) contained the same language. *Katz* and other cases construing the fourth amendment would *a fortiori* have been binding in the construction of original section 7. I cannot believe that the framers in 1968 amended section 7 to accomplish nothing.

I agree with the dissenting opinion in *Lester* that " 'electronic eavesdropping' carried out without authorization, in a situation not judicially recognized as an exceptional one where a warrant for a search may be forgone [sic], is unreasonable." *Lester,* 64 Haw. at 684, 649 P.2d at 362. In this case, the police had ample opportunity to obtain a warrant or warrants.

The accuracy and permanency of recorded conversations obtained by electronic device is, of course, no excuse for using the recordings against defendants, if their use violates section 7. As in the exclusion of evidence based on the fruit of the poisonous tree doctrine, the primary concern is not the accuracy of the evidence, but the protection of individual rights from governmental intrusion.

---

[4] This court stated in *In Matter of Kaohu,* 1 Haw. App. 469, 620 P.2d 1082 (1980), that the interpretation given by members of the legislature to a statute enacted five years earlier has no weight. *Cf. In Re Island Airlines,* 47 Haw. 87, 384 P.2d 536 (1963). *See also U.S. v. Southwestern Cable Co.,* 392 U.S. 157 (1968).